Intl case for today. Davis v. New Start Grpetal. New Start Group. Mr. Good afternoon, Judge Fuentes, Judge Fischer, Judge Dimond. If you'll please the court, I'm Bruce Marks. I'm representing the appellants, Davis et al., in this case, and I'd like to reserve five minutes for rebuttal, if I may. It's fine. Your Honors, this case presents many interesting issues, all of which I'm prepared to argue, but the case can be decided on very narrow grounds. The district court did not have the authority, as a matter of law, to enjoin the prosecution of the non-federal claims, and state court wanted to decide to dismiss the federal claims for form non-convenience. I'd like to make two brief points before I take what I would assume, based on today's experience, to be a number of questions from the court. First, when you read the district court's opinion, the district court granted the injunction pursuant to the All Writs Act. That was the basis in the opinion, the last sentence of the opinion, that the district court cited for its authority. The district court expressly disavowed the relitigation exception. It made no holding and made no finding, nor could it, that the aid of jurisdiction exception applied. You said that the district court did not have jurisdiction to dismiss the state law claims. Did I hear you correctly? You did not. All right. I heard you correctly, but it did not have jurisdiction. But did we say in Davis... Authority. Authority. I thought you said jurisdiction. I did not. If I did, Your Honor, you heard me correctly. All right. Well, let's take your word authority. Yes, sir. I mean, didn't we say in Davis 1 that the... In fact, we sent the case back to the district court, precisely so that it could determine the question of the anti-suit injunction. This court... In fact, I thought we said the court did have authority to do that. No, Your Honor. It didn't do that? We didn't say that in Davis? I don't believe that Davis said that. What Davis said... If... Go ahead. Is that the district court had jurisdiction to decide that. All right. Well, if it had jurisdiction, doesn't it have authority? No, it doesn't, Your Honor. Because there's one issue of jurisdiction, and it's a second issue of whether it has authority either under the All Writs Act or as an express exception to the Anti-Injunction Act to enter the injunction. How about the expressly authorized by act of Congress clause of the All Writs Act? Your Honor, as we have... I'm sorry, of the Anti-Injunction Act. As we have briefed it, Your Honor, we do not believe that the district court had authority as an expressed assumption under the Anti-Injunction Act to issue this injunction. Every Supreme Court case, and the only Supreme Court cases that have dealt with this issue, Madisonville Traction in 1905, Dietrich in 1881, and French v. Hay, all of those cases has concerned themselves with the power or the authority of the federal court as an exception to the Anti-Injunction Act to enjoin proceedings in the case which was removed. There is not a single... There is not a... Mr. Marks, didn't Judge Debevoise say in 2007 that your client's attempt to evade the strictures of the removal statute authorized the defendants in this case and authorized the district court to enjoin the prosecution of those fraudulently renewed state claims? Isn't that exactly what the defendant asked us to decide the last time, and isn't that exactly what we decided? I don't believe that is what this court decided. This court referred the case back to the district court on the first issue, decide the merits of the issue. This court said that other courts unanimously have concluded that there was a so-called fraudulent subversion gloss to the removal statute. But the fact of the matter is, Your Honor, there is not a single appellate court case which has affirmed the application of the removal statute as an express authorization to an injunction of a second filed case. Why did we remand it back to Judge Sleeve? Because you didn't decide it, and you referred it back to the district court. The defendant appealed because Judge Sleeve said. They cross-appealed. I understand. But the defendant appealed because Judge Sleeve said, I don't think I can consider this. And this court said, oh, yes, you can. Every court to address this has said you can.  We asked him to consider something he didn't have authority to consider? Judge Sleeve said, and what this court reversed, he said he didn't have the jurisdiction to decide the case because he had dismissed for forum non. And the law in the Third Circuit at that time was that you couldn't consider another issue until you decided your subject matter jurisdiction. In that case, the Third Circuit case, I'll have the name on the top, it's in the opinion, was reversed 9-0 by the Supreme Court. So what this court held was that the district court had the jurisdiction because we had asserted RICO claims to make the decision. For this court to decide that the removal statute would allow that it could be interpreted to apply to second-filed actions would require an analysis. When you look at what this court did in 1985 employees, when you look at what this court did in the U.S. Steel case, the court did an analysis. It applied Mitchum, Your Honor. And it looked under the Mitchum test to decide whether there was an express authority. This court has never, the first panel never did it. The first panel never looked at the dispute between Roth and Baranchik to decide what the standard would be. The first panel never decided Chick-Cam-Chu and what its application would be. All the court said is, look, other circuits have done this, although, as I say to you, they all did it in dicta. Not one of those decisions, under the so-called fraudulent subversion, not one of those decisions affirmed an injunction. Now, you're arguing that the court did not have authority to enter the injunction under the All Writs Act, correct? Your Honor, that's for sure. Yes, of course. Okay. Is your argument one in which we never need to get to the Anti-Injunction Act? Not necessarily, Your Honor. Because if we get to the Anti-Injunction Act, how do you get around the removal statute as giving the express authority? Well, let me say this. Clearly, even though the court, if you're looking at the court's decision, it relied on the All Writs Act. And it's clear. You're talking about Davis 1. No, I'm talking about the injunction. All right, okay. You're talking about Davis. That's what he, he didn't, he didn't, when he, when the court rendered his decision, it didn't say I have authority under the removal statute to enter this injunction. Its decision was predicated under authority under the All Writs Act. Under the All Writs Act. And it clearly didn't apply the relitigation exception, nor could it. And it didn't apply the aid and jurisdiction because what jurisdiction was it attempting to aid at the time that it rendered its decision? It had already decided it wasn't going to consider the federal claims. It had booted them for form non. There was no jurisdiction to protect. In your opinion, did the district court establish an adequate factual basis for us to make any determination as to how it made its decision? Well, under the All Writs Act, absolutely none. It did, there's, there is absolutely no discussion how the All Writs Act applied. And there was no, absolutely no discussion that the decision was in, was in aid of jurisdiction. There's a one sentence, you know. How about the express authority by an act of Congress? Your Honor, that. And that has to do with the removal statute. And let me say, let me say this. There's no Supreme Court case that says that that statute applies to second-filed actions. Do you need a Supreme Court case? How about a court of appeals case? There is no court of appeals case with the exception of the Kansas public which, which is affirmed in an injunction on a second-filed case. Every court that this panel looked at before, and every case cited by the district court, and every case cited by our opponents, either they affirmed the denial of an injunction or they vacated the injunction. How about, how about an explicit finding by the district judge that the base, that the reason for the filing of the second state court suit is to do an end around or to subvert the removal statute? What if you have that finding by a district judge? Well, first of all, you have to conclude that the removal statute applies to second-filed actions. Our position that it doesn't. And let me say this. There's a fallacy in that because all of the cases that they looked at talk about, well, you have to have the injunction because otherwise you could have a fraudulent subversion in a diversity case where somebody, you've removed the case and then somebody then refiles the case in state court. Right? Well, we know from Judge Diamond that you don't need an injunction in order to remedy that situation. And Judge Diamond's recent opinion. What's Judge Diamond? We have two Judge Diamonds. This Judge Diamond. I want to make sure which Judge Diamond you're speaking of. Judge Diamond in 2008 rendered a decision in JOCZ, the Eichle Engineers. And in that case, he dealt with a case that had been removed because there was an allegation that there was fraudulent joinder. And Judge Fuentes, in your case in Diet Drugs, you've said that you only enter injunctions when it's necessary. And that's the test under Meacham when you describe whether there's an explanation. Why isn't it necessary in this case? Because you don't need to have the injunction. If in the diversity case, if there's a fraudulent joinder, the case can be removed. Right, Judge Diamond? Now, wait a minute. The question is... In a diversity case, if somebody files a diversity case, files a case in state court, and there's fraudulent joinder, the defendant can remove the case. And that's what exactly happened in front of Judge Diamond. Your red light is on, Mr. Marks. I'm sorry. Unless there are other questions by the panel? There are none. Mr. Marks, we'll get you back on rebuttal. Okay. You have five minutes, I think you said. Ms. Cohen? May it please the Court, I am Lisa Cohen. I represent Arnold Kislin, one of the ten defendants in this case. With me at council table are Mr. Mass and Mr. Biggers, who represent two of the other defendants. And I'm here to argue the common issues on behalf of all of the defendants. And there are two issues on appeal, Your Honor, and the first is the one that as of now we've only addressed, which is whether the district court abused its discretion in enjoining the plaintiffs. And there were two reasons to affirm that injunction. Number one, because as Your Honors have recognized, the plaintiffs were subverting the removal statute. And number two, the plaintiffs, by their shenanigans, and I use that term decidedly so, evaded a motion that was pending and over which the court had jurisdiction by going into state court and manufacturing a defense that otherwise wasn't available to them. Well, let's suppose that before they filed the case that was removed, that they had filed on the same day two parallel cases, one in the Chancery Court in Delaware and one in the federal district court. And they alleged the RICO claims in the federal case and they alleged state law claims in the Chancery case. Wouldn't they have the perfect right, and hasn't the Supreme Court said there's a perfect right to have parallel actions move forward? Now, one may have been stayed until the other was disposed of, but wouldn't that be different? I absolutely agree with you that would be different, but that's not what happened. So the mere fact that they filed them all in one neat package and filed in the Chancery Court and got removed, you're saying forever precludes them from going back into the state court with strictly state court action based on these facts. Well, that's not all that these plaintiffs did. I mean, they had already... No, but that's all we have in front of us. Well, you have more than that. They litigated in federal court. They agreed to certain stipulations in federal court. They attended teleconferences... Well, yeah, because there was nothing left in state court. The entire case was removed. That's right. And it was not until plaintiffs, excuse me, defendants had made four motions to dismiss on the various grounds including comedy, forum nonconvenience, the direct estoppel motion that was eventually decided, and defendants had also made a motion to enjoin. And at a teleconference in which Judge Sleet said to them in no uncertain terms, I don't like what you're doing, plaintiffs. I don't like that you've forum shopped. I don't like that you're before this court when you've had plenty of opportunity elsewhere. And, by the way, why didn't you seek to remand? And, by the way, I'm going to deny your bid for discovery. And, by the way, I'm going to consider the direct estoppel motion first because I think that defendants are absolutely right. This case should be barred by direct estoppel. Thirteen days later, that's when plaintiffs went into state court for the first time. How long, counsel, from the removal to the filing of the second state court action? Must have been about five months. The case was filed in November. So you're suggesting that the plaintiffs sort of dangled their toes in the federal water to see how warm it was, and when they didn't like the temperature, that's when they decided to go back into state court? That's absolutely right. That's absolutely right. And more than that... But it was before the dismissal. It was before the dismissal. And more than that, they didn't exactly decide to go into state court. They kept their toes in federal court. They wanted to pursue the RICO claim and kept pursuing it. This, again, would have been a slightly different case had plaintiffs said, okay, I'm dismissing everything in federal court. Did they ever move to dismiss the state court claims in federal court? I'm sorry, did they... Did they ever move to dismiss the state court case in federal court or remand the state court claims? No. To the Chancery Court? No, no, sir. There was no motion to remand. There was just simply an amendment of the pleadings. And so, as I said, there would have been no... There wouldn't have even been an Anti-Injunction Act question had the plaintiffs not done what they had done because we had sought to enjoin them from this vexatious and harassing litigation. Mr. Marks says that there is no authority under the All Writs Act to enjoin a non-federal case that's in state court once the federal case has already been disposed of. How do you answer that? Where is the authority? The authority under the All Writs Act? Yes. I mean, the Anti-Injunction Act is only a bar to implementing the All Writs Act. I think Your Honors are absolutely right when you said that if you thought there was nothing left to protect, you would not have remanded this case back to the district court to determine whether an injunction ought to issue. The All Writs Act language is... Well, now, we just said, didn't we just say there's jurisdiction? I don't... It would have been entirely futile for you to remand it back having said you're empowered to... Well, sometimes we do things like that. I mean, but we said the Davis One opinion, as I read it, basically said that the district court had jurisdiction to consider the motion under the All Writs Act. That is correct. You actually said that in the present case, there was never a time when the district court did not have jurisdiction over appellants, the parties to be enjoined. And to decide whether it was authorized to issue the requested injunction or not. So it had jurisdiction and it could decide whether to issue the injunction or not. It seems to me that's the law of the case. I thought Mr. Marks was saying that that was not the case and he could clarify on rebuttal, but I thought he was saying that the court was not authorized and did not have jurisdiction or one or the other or both. But we said in Davis One that it did. And so it seems to me if that's the law of the case then that's not an issue we should address. I think that's right. But didn't the court further say this is sufficient to give the district court jurisdiction to decide whether in the circumstances of the case the All Writs Act authorized or required it to issue the requested injunction. To decide doesn't seem to me, authority to decide doesn't seem to me to have been a decision on the issue before us now. What Mr. Marks seems to be arguing is that the in-aid of jurisdiction test within the Anti-Injunction Act is the same as the in-aid of and necessary or appropriate in-aid of jurisdiction and agreeable to the usages and principles of law, which is the language from the All Writs Act. Now this court in Grider, in Your Honor's opinion, has already decided that those are not the same tests, that the All Writs Act allows for broader power to grant injunctions. It is not the same as saying that something is necessary in aid of jurisdiction as in the Anti-Injunction Act. Plaintiffs also, the injunction here, the power comes from the All Writs Act. The court is also correct that the power is not prohibited by the Anti-Injunction Act because it fits within the expressly authorized authority, excuse me, expressly authorized exception. Plaintiffs now seem to want to carve that back, but there is no case that allows such a carve back. Is there any, and I understand your argument there, but is there any case that says that a subsequently filed strictly non-federal state court claim is the same case that was previously removed? Yes, our brief has a number of cases, including one that Mr. Marks admitted, the Kansas public employment case. Cross v. Liskom is another case that comes to mind. And the whole premise of that argument seems to me to be incorrect because what that, accepting that argument essentially says that if a plaintiff files a case in federal court, all it has to do is change the index number and refile a new case minus the federal question jurisdiction back into state court. And that somehow agrees that. Maybe you could help me understand this a little bit better. Supposing the federal claims were preserved before Judge Slate and you also had state law claims and he determined that the federal claims were dismissed or would be dismissed because of direct collateral. So he had before him were the state claims and he looked at those state claims and dismissed them and said, you can't file further claims. The scenario here though is that he didn't have state law claims before him. They were dismissed. He had virtually nothing before him. All what happened was that the plaintiff dismissed those cases and brought them as subsequent claims, right? Am I right? What the plaintiffs did was that they amended their... Amended the complaint to dismiss all of the state-related claims. Is that correct? That's correct, they did. And then proceeded to the Delaware Chancery Court and filed those, essentially those same claims in the Chancery Court. That is correct. That is what they did. Does that not make a difference? I mean that these are now brand new, different according to plaintiff claims in the Chancery Court? Well, they were... They were not pending before Judge Slate? They were actually precisely the same claims that had been pending before Judge Slate in this very case. Once a case is removed from a State court to a Federal court, the entire case is removed. Plaintiffs should not be able to, through self-help, evade that removal. Defendants have absolutely the right to have that entire case heard before the Federal court. In fact, the removal statute says so in three places, Section 1441, Section 1446, and Section 1447. Did Judge Slate make a finding as to why the injunction should be issued, why the cases in the Chancery Court cannot proceed? Well, sure. He said that plaintiffs have subverted the removal statute, that it's expressly, that's an expressly authorized exception to the Anti-Injunction Act, and he was granting the injunction accordingly. Okay. Okay. If Your Honors have no further questions, I can sit down. Hearing nothing. You're right. The dismissal was based on, the dismissal of the claims, the Federal claims, was not based on foreign nonconvenience, I gather. The Federal claims were dismissed because they were, because of the doctrine of collateral, or direct estoppel. That's correct. They were dismissed in New York based on foreign nonconvenience. So foreign nonconvenience is not an issue before us in light of the district court's decision concerning the removal case. That is correct. Okay. I have no further questions. Thank you. Thank you, Your Honors. Thank you, Your Honor. One, Judge Fisher quoted the exact provision of the case that I'm referring to. They decided, the first panel decided there was jurisdiction. The first panel did not decide whether the district court had authority. That was remanded for the district court to decide. And that's what it said at the end. We're not going to decide the merits of this. Back for the district court to issue a ruling on it. He apparently decided it in the affirmative, didn't he? Judge Slate? He did. He entered an injunction. He said that he had the authority under the All Writs Act, but our position is he didn't. But let me make a point. It's not really true to say that the federal claims were not dismissed for forum non. They were dismissed for forum non in New York. We were filed in state court because we couldn't be in federal court. The defendants' forum shopped by removing, not to the federal court because they wanted to deal with the merits of it, but because they wanted them to be dismissed for forum non again. So when Judge Slate dismissed the federal claims, it was for forum non convened based on estoppel. It wasn't based on the merits of the claims, failure to dismiss. But let's assume I didn't do what I did, and I think that I had a right to do what I did under Atlantic Coast, where you can go into federal court, and if you don't like the result on federal claims in federal court, you can go into state court on your state court claims. And the Supreme Court said in that case, where you want federal court first only, state court later, the federal court can't enjoin, because like it or not, you're permitted under our system of federalism to have parallel proceedings. But let's assume, Judge Fuentes, I didn't do what I did, and I stayed in the federal court to the bitter end. I didn't amend the complaint to remove the state court claims so I could prosecute those only in state court. Judge, the court below then dismisses for forum non convened based on estoppel. Under Chick-Cam-Chu, he cannot enjoin my clients from filing their non-federal claims in state court. So even if he was correct, which he wasn't, that we somehow subverted the removal statute, all he would have had the power to do, and all that would have been an appropriate remedy, would have been to stay the prosecution of the Chancery Court action until the federal court decision was decided. And at that point, because there would be no possibility that I could possibly do anything to interfere with federal jurisdiction, was given up because of forum non convenes, he would have had to vacate the injunction. There's not like some colossal penalty where somebody has to give up billion-dollar claims because they, in good faith, attempted to follow the law of this circuit, Marks v. Stinson, lower Gwinnett, Atlantic Coast, which says that you can prosecute federal claims in federal court at one point, at one time, and state claims in state court at the other. That's all we tried to do, because what we quickly figured out, when the defendant's removed, they didn't want to deal with the merits. And they, yeah. Sotomayor, Chick Kim's true case does authorize, or would seem to authorize Judge Sleet to issue the injunction that he issued. Absolutely not. When authorized. I'm sorry. When expressly authorized by statute. And isn't that the basis that he used for issuing the injunction? No, because, because what you, what, what, how could he possibly be justifying either of the two prongs? It's not the, we know from Chick Kim Chu, it's not the relitigation exception, because all the court has decided is that the federal claims cannot proceed in federal court. Delaware, just like Texas in Chick Kim Chu, is essentially an open courts standard. The federal, the non-convene, form non-convenes in Delaware is a different standard than the federal court. Yeah, but we're just talking about Judge Sleet's injunction. Okay. And, and the Supreme Court has said that Congress has permitted injunctions in certain specific circumstances, including where authorized by statute. Right. But it has to be in aid of jurisdiction. Wait a minute, it doesn't say that. In fact, the word or is used. I'm sorry? Well, all right. Now I'll take that back. When expressly authorized by statute, necessary in aid of jurisdiction, or necessary to protect the, and effectuate the court's judgments. You have three categories. Well, we know it's not, we know that it's not, well, the necessary or appropriate in aid of respective jurisdictions. First of all. You have three separate categories. Well, which, he, he, he didn't pick one, but it can't be the necessary, Your Honor, because he's got no jurisdiction to protect. But it seems clear to me that if we're talking about the removal statute, we're talking about the category that says expressly authorized by statute. But once he's decided to dismiss the case, once he's decided that he's not going to continue the removed case, what is he protecting? What is there to protect? Why would a Federal court, which has decided that he's not going to hear a case that has, say, that has both Federal and State claims because of form non, why should the Federal court be interfering with the State court's right to hear the State court claims? It's a matter of Federalism. Yes, Judge Sleet could tell me, Marx, you can't go to any of the other 50 States and file the RICO, because we've decided that the RICO claims do not belong in Federal court. And Marx isn't going to do that. Don't forget, I didn't refile them in Federal court. I refiled them in the Court of Chancery. Okay, Mr. Marx, your red light is on. We do appreciate your arguments here this afternoon. We think it's a very typical case, and we'll take the case under advisement. Thank you, Judge. Thank you very much. That was our last case, so court will adjourn.